**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                                    )
**DIRISU OJO MOMOH,**                            )
                                                                    )
      Appellant,                                      )
                                                                    )
      v.                                                    )     Case No. 1:16-cv-00822 (APM)
                                                                    )
**VICTOR OSAYANDE,**                              )
                                                                    )
      Appellee.                                       )
_____)

## MEMORANDUM OPINION

Dirisu Ojo Momoh appeals from a Bankruptcy Court determination that his debt to Victor Osayande is not dischargeable because Momoh obtained the money he owes by fraud. Momoh contends that the Bankruptcy Court erred in reaching that conclusion because the record evidence demonstrates he did not intend to deceive Osayande, but, in fact, repaid Osayande in part, thereby establishing Momoh's intent to repay Osayande. Upon review of the record and consideration of the parties' briefs, the court affirms the ruling of the Bankruptcy Court.

I

The court assumes the parties' familiarity with the underlying record and recites only what is necessary to resolve the narrow issue on appeal.

In early 2011, Momoh approached Osayande with an opportunity to invest in Momoh's business, "Dirisu Momoh Auto Sales, Inc.," which purportedly purchased cars in the United States and resold them in Nigeria for a profit. *See* Br. of the Appellee, ECF No. 7 [hereinafter Appellee's Br.], at 5[1]; Appellee's Br., App'x, ECF No. 7-1, at 28–102 [hereinafter Osayande Direct Exam.

---

[1] All pin citations are to the document's original pagination, when available.

Tr.], at 4–7. Dirisu Momoh Auto Sales, Inc. did not exist. *See* Br. of the Appellant, ECF No. 6 [hereinafter Appellant's Br.], App'x, ECF No. 6-1, at 24–40 [hereinafter Trial Ruling Tr.], at 10. Momoh and Osayande subsequently entered into two contracts—one in April 2011, the other in July 2011—under each of which Osayande invested $6,500 in "Dirisu Momoh Auto Sales, Inc." and expected to earn a profit of $1,625 on a bi-monthly basis for a set period of time. *See* Appellant's Br., App'x, ECF No. 6-1 [hereinafter Appellant's App'x], at 20–21. On March 26, 2012, Osayande filed a police report claiming Momoh had defrauded him. Appellant's Br., App'x, ECF No. 6-1, at 18–19 [hereinafter Police Report], at 1. The Police Report reflects that Osayande gave the police a copy of the two contracts and supposedly made a statement "that [Momoh] did give him 1600 dollars in June of 2011." *Id.* at 2.

At trial, Momoh testified that he made three payments to Osayande to satisfy his obligations under the contracts. First, he claimed he made a cash payment to Osayande in June 2011, for which Osayande refused to give him a receipt. *See* Trial Ruling Tr. at 12. Second, Momoh testified he wired two payments to Osayande on September 26, 2011. In support, he submitted an exhibit purporting to show that he made two wire transfers—one for $759 and one for $734—to "Victor Osayange," in Salt Lake City, Utah, on September 26, 2011, via Western Union. Appellant's App'x at 17.

Osayande testified that he never received any payments from Momoh. *See* Osayande Direct Exam. Tr. at 19, 25. Additionally, he stated under oath that his name is not spelled with a "g," and he has never been to Salt Lake City, Utah. *See id.* at 25–27. Lastly, Osayande testified that the Police Report misstates what he told the police; instead, he "told the police that [Momoh] said he gave [Osayande] $1600, and that's not true." *Id.* at 33.

The Bankruptcy Court ultimately credited Osayande's testimony over Momoh's testimony and ruled that the debt was not dischargeable because it was procured by actual fraud. *See In re Momoh*, No. 14-291, 2016 WL 270155, at *2, 5–6 (Bankr. D.D.C. Jan. 20, 2016).

II

Federal district courts have jurisdiction to review the final judgments of the bankruptcy courts in their judicial district.  *See* 28 U.S.C. § 158(a).  In so doing, the district court reviews the bankruptcy court's legal conclusions de novo and factual findings for clear error.  *Yelverton v. District of Columbia*, 529 B.R. 1, 3 (D.D.C. 2014).

Clear error exists only when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Moore v. Robbins*, 24 F. Supp. 3d 88, 94 (D.D.C. 2014) (internal quotation mark omitted).  "If the [fact-finding] court's account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."  *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985); *accord Hope 7 Monroe St. Ltd. P'ship v. RIASO L.L.C.*, 473 B.R. 1, 6 (D.D.C. 2012), *aff'd*, 743 F.3d 867 (D.C. Cir. 2014).  Indeed, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Anderson*, 470 U.S. at 574; *accord Moore*, 24 F. Supp. 3d at 94.  This standard applies equally to the district court's review of oral and documentary record evidence, as well as the bankruptcy court's credibility determinations. *See Alberts v. HCA, Inc.*, 496 B.R. 1, 9, 18–19 (D.D.C. 2013); *In re Chreky*, 450 B.R. 247, 251–52 (D.D.C. 2011).

Under Section 523 of Title 11 of the United States Code, an individual debtor in bankruptcy seeking discharge of his debts under Section 727 remains liable for monetary debts "obtained by—

false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The terms "false pretenses," "false representation," and "actual fraud" "imply elements that the common law has defined them to include" at the time each term was added to the statutory provision. *Field v. Mans*, 516 U.S. 59, 69–70 (1995); *see Husky Int'l Electronics, Inc. v. Ritz*, 578 U.S. ___, 136 S. Ct. 1581, 1586 (2016). The Supreme Court has read the term "actual fraud" broadly to mean "anything that counts as 'fraud' and is done with wrongful intent." *Husky Int'l Electronics*, 136 S. Ct. at 1590. When the term "actual fraud" was added to § 523(a)(2)(A) in 1978, the District of Columbia defined the elements of fraud as: "(1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977); *accord Va. Academy of Clinical Psychologists v. Grp. Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1233 (D.C. 2005).

III

Momoh raises two interrelated arguments why the Bankruptcy Court erred in concluding he intended to deceive Osayande. First, Momoh contends that Osayande bore the burden of proof at trial to show Momoh intended to deceive him, and Osayande failed to submit evidence proving Momoh had no intention of repaying Osayande. Second, Momoh asserts that the evidence he introduced firmly establishes that he repaid Osayande a portion of the money owed and, therefore, could not have intended to deceive Osayande.

The court concludes that the record contains ample evidence to support the Bankruptcy Court's determination that Momoh intended to deceive Osayande. As a preliminary matter, this court finds no clear error in the Bankruptcy Court's conclusion that Osayande's testimony was credible and Momoh's testimony was not credible. *See Alberts*, 496 B.R. at 18–19; *In re Chreky*,

450 B.R. at 251. Momoh's testimony confirmed that he offered and encouraged Osayande to enter into contracts knowing that the premise of those contracts—investments in "Dirisu Momoh Auto Sales, Inc.," a business engaged in car sales—was false because no business with that name existed. *See In re Momoh*, 2016 WL 270155, at *2–3. This "completely false representation," as the Bankruptcy Court characterized it, caused the court to call Momoh's intent into question. *See id.* at *2. Moreover, the Bankruptcy Court found that Momoh's testimony that Osayande had insisted that Momoh include the business name "Dirisu Momoh Auto Sales, Inc." in the contracts was "totally incredible, a whopping lie." *Id.* The Bankruptcy Court explained that "[i]t is absurd to think that Osayande was the source of the reference in the parties' contracts to 'Dirisu Momoh Auto Sales, Inc.'" *Id.*

Momoh offers no evidence to contradict the Bankruptcy Court's findings regarding his or Osayande's respective credibility. Having concluded that Momoh lied about one critical aspect of his testimony, the Bankruptcy Court acted well within its discretion in doubting that Momoh was "a credible witness with respect to other crucial aspects of his testimony." *Id.*; *see United States v. Sheppard*, 569 F.2d 114, 116 (D.C. Cir. 1977) ("Evaluations of credibility are, in our system, within the exclusive province of the trier of fact, who is in a position to take account of such factors as the demeanor and conduct of the witnesses."). Additionally, none of the testimony Osayande gave leaves the court with "the definite and firm conviction" that accepting its truth, as the Bankruptcy Court did, would be a "mistake." *See Moore*, 24 F. Supp. 3d at 94. Consequently, the court finds no clear error in the Bankruptcy Court's finding that Momoh was not a credible witness and that Osayande was "entirely credible." *See In re Momoh*, 2016 WL 270155, at *2.

None of the other evidence on which Momoh relies—the Police Report, the Western Union letter, or the July 2011 contract—proves he made payments owed under the contracts or otherwise

proves erroneous the Bankruptcy Court's conclusion that he intended to defraud Osayande. Although the Police Report includes a statement that Osayande told the officer Momoh paid him $1,600 in June 2011, the Bankruptcy Court, in its role as trier of fact, credited Osayande's testimony that he never received any payment owed under the contract and concluded the Police Report contains an incorrect transcription of what Osayande said. *See In re Momoh*, No. 14-291, 2016 WL 1417930, at *2 & n.2 (Bankr. D.D.C. Apr. 8, 2016) (explaining, in the process of denying Momoh's Motion for Reconsideration, that the Bankruptcy Court originally credited Osayande's testimony that Osayande told the police Momoh *claimed* to have paid him $1,600, which was not true). Momoh points to no record evidence to contradict that credibility determination. For instance, he did not call the police officer who wrote the report to attest to the Police Report's accuracy and to challenge Osayande's testimony. In the absence of such contrary evidence, the Bankruptcy Court's finding that the Police Report contains an incorrect transcription of what Osayande said was not clear error.[2]

Next, the Western Union letter is of little help to Momoh as it not only misspells Osayande's name but also wired money to a location—Salt Lake City—where Osayande testified he had never been. Moreover, it lacks any indicia of reliability—it is not signed and no Western Union officer testified as to its authenticity. The Bankruptcy Court's crediting of Osayande's testimony over an exhibit of dubious authenticity was not clear error. Moreover, given the document's deficiencies, the Bankruptcy Court did not err in finding that the document was insufficient evidence of Momoh's supposed intent to repay Osayande.

---

[2] The court also notes that it is doubtful whether the Police Report could have been admitted for anything more than impeachment purposes. *See* Fed. R. Evid. 803(6), 803(8) & cmts. (6), (8)(c); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321–22 (2009) (explaining that documents such as "police reports generated by law enforcement officials . . . do not qualify as business or public records" because, although kept in the regular course of business, they are "calculated for use essentially in the court, not in the business" (internal quotation marks omitted)).

Lastly, the court has no qualms with the Bankruptcy Court's conclusion that the fact that Osayande entered into a second contract with Momoh in July 2011 is not evidence that Momoh made payments owed under the first contract. The July 2011 contract is silent as to whether any payments owed under the April 2011 contract were made or missed. Thus, like the Police Report and Western Union letter, the July 2011 contract does not leave this court with the "definite and firm conviction" that the Bankruptcy Court erred in finding that Momoh acted with intent to deceive Osayande.

IV

In sum, the court is satisfied that the evidence supports the Bankruptcy Court's conclusion that Momoh acted with intent to deceive Osayande when the parties entered into the two investment contracts. As that was the only issue Momoh raised on appeal, the Bankruptcy Court's legal conclusion that Osayande defrauded Momoh is not erroneous. Accordingly, the debt Momoh owes Osayande is not dischargeable, pursuant to 11 U.S.C. § 523(a)(2)(A). The Bankruptcy Court's ruling is affirmed.

A separate Order accompanies this Memorandum Opinion.

Dated: February 6, 2017

Amit P. Mehta
United States District